UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/16/19

MICHELLE MELENDEZ,

                                Plaintiff,

    -against-

COUNTY OF WESTCHESTER, WESTCHESTER
COUNTY DEPARTMENT OF CORRECTIONS
SUPERIOR OFFICE, and KEVIN CHEVERKO,
*individually and in his official capacity,*

                                Defendants.

17-cv-9637 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

On or about December 7, 2017, Plaintiff Michelle Melendez ("Plaintiff"), a former Correctional Officer trainee at the Westchester County Department of Corrections Superior Office ("DOC"), commenced this action under: Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e - 2000e-17, the American Disabilities Act of 1990, 42 U.S.C. § 12101 *et. seq.* ("ADA"), 42 U.S.C. § 1983, New York State Human Rights Law Executive Law § 296, and Tortious Interference under New York State Tort Law. (*See* Complaint ("Compl."), ECF No. 1; Amended Complaint, ("AC"), ECF No. 31.) Plaintiff alleges that while a trainee, she was subject to sex/gender discrimination, disability discrimination, sexual harassment, a hostile work environment, retaliation, and wrongful termination by the County of Westchester, Westchester County Department of Corrections Superior Office, and KEVIN CHEVERKO (collectively, "Defendants"). Before the Court is Defendants' Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 37.) For the following reasons, Defendants' Motion is GRANTED in part and DENIED in part.

# BACKGROUND

The following facts are derived from the Complaint and are assumed to be true for the purposes of this motion.[1]

In or around September 2015, Defendants hired Plaintiff for a Correctional Officer position at Defendants' correctional facility located at 10 Wood Road, Valhalla, New York 10595. (AC ¶ 13.) Plaintiff was a State Corrections Officer for approximately seven years prior to her employment with Defendants. (*Id.* ¶ 14.) Around September 14, 2015, Plaintiff began employment as a Correctional Officer trainee, with a condition of completing one year of training ("probationary period.") (*Id.* ¶ 15.) Around March 28, 2016, Plaintiff was involved in a car accident. (*Id.* ¶ 16.) Plaintiff returned to work on April 21, 2016. (*Id.* ¶ 16.) Upon Plaintiff's return to work, Plaintiff requested disability-based accommodation and submitted medical documentation to Defendants. (*Id.* ¶ 16.) Plaintiff was granted a "light duty" restriction, which required Plaintiff to have limited inmate contact. (*Id.* ¶ 16.) Plaintiff was the only female Correction Officer serving a probationary period at that time. (*Id.* ¶ 17.)

Around June 16, 2016, Defendants assigned Plaintiff to Defendants' 1-K Control Room ("Control Room"), which is located before the entrance of the 1-K Cell Block in the section of the correctional facility identified as "Old Jail." (*Id.* ¶ 18.) Defendant's Control Room does not fully

---

[1] The background facts alleged herein are derived solely from Plaintiff's amended complaint. In their briefing, the parties dispute what extrinsic evidence the Court may rely upon to decide this motion. The Court notes that when ruling on motions to dismiss courts must consider the complaint, "as well as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499 (2007). While consideration of matters outside the pleadings generally converts a motion to dismiss to a motion for summary judgment, consideration of facts for which judicial notice may be taken does not. *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 60 (2d Cir. 2016); Fed. R. Civ. P. 12(d). Courts may take judicial notice of any adjudicative fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(a)-(b). "Adjudicative facts" are "facts about the parties and their activities, businesses, and properties." *Langevin v. Chenango Court, Inc.*, 447 F.2d 296, 300 (2d Cir. 1971). "The court must take judicial notice if a party requests it and the court is supplied with the necessary information," Fed. R. Evid. 201(c)(2). As such, the Court is permitted to rely (as it does) on Defendants' release form, the EEOC charge form, the EEOC amendment letter, and Plaintiff's right to sue letter in deciding this motion.

limit inmate contact, as a corrections officer is required to maintain traffic control through the 1-K Block hallway gate. (*Id.* ¶ 19.)

On or about June 15, 2016, one of Plaintiff's inmates ("Inmate") "aggressively grabbed Plaintiff's buttocks." (*Id.* ¶ 20.) Immediately after, officers restrained Inmate. (*Id.* ¶ 21.) While Plaintiff was waiting for Defendants' Emergency Response Team's arrival, Inmate shouted profanity and lewd comments at Plaintiff. (*Id.* ¶ 22.) Plaintiff, upset and emotional, screamed profanity back at the inmate and threw her latex gloves in Inmate's face. (*Id.* ¶ 23.) Defendants' employee and Sergeant witnessed Plaintiff's behavior and verbally counseled Plaintiff, who immediately apologized for her "impetuous and unexpected reaction." (*Id.* ¶ 24.)

Around June 16, 2016, Plaintiff filled paperwork to file outside charges against Inmate; however, Plaintiff admits that she is uncertain as to whether those documents were ever processed. (*Id.* ¶ 25.) Around August 22, 2016, Defendants interrogated Plaintiff on her supposed use of force in response to Inmate's conduct in grabbing her buttocks. (*Id.* ¶ 27.) In response, Plaintiff asked Defendants if she was being penalized "for the inmate sexually assaulting her." (*Id.* ¶ 28.) On or about that same day, Defendants purportedly denied Plaintiff a salary increment that would have been due on October 1, 2016 because she was under investigation for the use of force when Inmate sexually assaulted her. (*Id.* ¶ 29.) Male corrections officers, who were supposedly also under investigation for the use of force, did not have their salary increment denied. (*Id.* ¶ 30.) For this reason, Plaintiff believes that she was discriminated and retaliated against. (*Id.* ¶¶ 31-32.)

On September 1, 2016, Defendants terminated Plaintiff before the end of her probationary period. (AC ¶ 33.) Plaintiff's Union Representative discussed with Plaintiff the possibility of ending her employment with Defendants by resignation instead of termination, explaining that if Plaintiff ended her employment by resignation, she would be able to receive a law enforcement

position in the future. (AC ¶ 33.) Defendants were aware of Plaintiff's conversation with her Union Representative and allowed Plaintiff to resign on September 2, 2016 instead of terminating her. (*Id.* ¶ 34.) During that general time, a male corrections officer, who was also completing his probationary period, supposedly responded to an inmate with force by pushing the inmate. (*Id.* ¶ 35.) In that case, the male correction officer did not file charges against the inmate and passed his probationary period, obtaining permanent status. (*Id.* ¶¶ 34-35.) Plaintiff was the only female on "light duty" that did not pass her probationary period. (*Id.* ¶ 36.) For this reason, Plaintiff believes that she was discriminated against based on sex and disability and was retaliated against for requesting a reasonable accommodation. (*Id.* ¶ 37.)

Around March 12, 2018, an interviewer from the New York State Office of Court Administration ("OCA")[2] informed Plaintiff that Defendants sent him a letter explaining the details surrounding Plaintiff's investigation against Inmate and Plaintiff's termination before the expiration of her probationary period. (*Id.* ¶ 38.) The letter further explained that due to this information, the interviewer had to disqualify Plaintiff from the selection process, even though Plaintiff had passed other rounds of the process. (*Id.* ¶ 38.) Plaintiff believes that Defendants sent this information to OCA in retaliation for her filing a lawsuit. (*Id.* ¶ 39.) Plaintiff therefore believes that Defendants tortuously interfered with her opportunity to attain employment. (*Id.* ¶ 40.)

To date, Plaintiff has been unable to attain employment in a law enforcement position within the state of New York and believes that Defendants may have circulated the same letter, which falsely states that Defendants investigated and terminated Plaintiff's employment prior to the expiration of her probationary period. (*Id.* ¶ 41.) Consequently, Plaintiff has felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed and has allegedly

---

[2] This entity is incorrectly named as "New York Supreme Court Officers Association" in the AC.

suffered (and continues to suffer) emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. (*Id.* ¶¶ 42-44.)

## STANDARD OF REVIEW

Under Rule 12(b)(6), the inquiry for motions to dismiss is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at 679. A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

For motions brought under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "[T]he court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the

pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). Though a court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, [it] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

## DISCUSSION

Defendants argue that, as a preliminary matter, this Court lacks subject matter jurisdiction over Plaintiff's ADA and Title VII claims because Plaintiff did not allege such claims in her EEOC charge. (Defendants' Memorandum, ("Def. Mem.") at 6, ECF No. 38.) As a second threshold issue, Defendants argue that Plaintiff's retaliation claims are barred by her signed release. (*Id.* at 7.) Third, on the merits, Defendants argue that Plaintiff's federal and state law claims fail to state a cause of action and meet the pleading standards set out in Fed. R. Civ. P. 12(b)(6). (*Id.* at 8-18.) The Court agrees with Defendants that Plaintiff's complaint contains numerous procedural and meritorious deficiencies and addresses all of Defendants' arguments in turn.

### I.  Exhaustion

Defendants first argue that Plaintiff failed to administratively exhaust her claims because her initial EEOC charge only contained facts and claims related to Title VII retaliation, (*Id.* at 6-7), and her amended EEOC charge did not include any additional facts to color claims of discrimination or retaliation under the ADA. (Defendants' Reply Memorandum, ("Reply") at 1-2, ECF No. 40.). Plaintiff claims that her checking only the retaliation box on the initial EEOC charge form is not detrimental, and that her amendment letter—which reflects that she added a claim for disability discrimination—suffices to relate all her claims back to her initial retaliation claim. (Plaintiff's Opposition, ("Pl. Opp."), at 6, ECF No. 41.) The Court agrees with Defendants.

## A. Title VII: Sex-Based Discrimination and Retaliation Claims

Title VII requires plaintiffs to first exhaust their administrative remedies before filing suit in federal court. *See* 42 U.S.C. § 2000e-5(f)(3). Exhaustion demands timely filing of charges with the EEOC and obtainment of a notice of right to sue. *Id.*; *see also Williams v. N.Y. Hous. Auth.*, 458 F.3d 67, 69-70 (2d Cir. 2006). Claims are timely filed with the EEOC if they are brought within 180 or 300 days of an alleged unlawful practice. *See* 42 U.S.C. § 2000e-5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). Title VII exhaustion has been analogized by courts to statutes of limitations and is not a waivable jurisdictional prerequisite. *See Hardaway v. Hartford Pub. Works Dep't*, 897 F.3d 486, 489 (2d Cir. 2018).

Here, nowhere in Plaintiff's initial EEOC charge (*See* EEOC Charge, ECF No. 39-5) or in Plaintiff's amendment letter does she allege any claims of sex-based discrimination. (*See* Amendment Letter, ECF No. 41-1.) Plaintiff's only nexus to sex-based discrimination seems to derive from her mention of being sexually assaulted by Inmate and complaining about such an assault. (*See* EEOC Charge ¶¶ 8-16.) Such bare facts are far from sufficient to support claims for sex-based discrimination, particularly when combined with her not checking the box for discrimination or amending her complaint to include such a claim. Further, nowhere in Plaintiff's Notice of Right to Sue Letter was she notified that she has the right to bring a federal civil action based on Title VII discrimination. (*See* Right to Sue Letter, ECF No. 41-2.) Hence, Defendants have not been put on notice that Plaintiff had any sex-based discrimination claims that she was asserting against them.

Further, whilst Plaintiff is correct that the mere failure to place a check mark in the correct box is not always considered fatal, *Williams*, 458 F.3d at 71, Defendants correctly note that the Second Circuit instructs courts to focus on the facts alleged in the EEOC complaint to determine

whether they support a cause of action. *Id.* In that vein, there are frankly no facts in the twenty-four enumerated paragraphs that could give rise to an inference of sex-based discrimination.

The Court does, however, find that Plaintiff articulated sufficient facts to put Defendants on notice of a Title VII retaliation claim. Plaintiff claimed that around June 16, 2016, an inmate aggressively grabbed her buttocks. (EEOC Charge ¶ 7.) That same day, Plaintiff completed the necessary paperwork "to file outside charges against the inmate for sexual assault" and "reported the inappropriate behavior to her Sector Supervisor (*Id.* ¶¶ 9,11). Plaintiff then claims that around August 24, 2016, Defendants interrogated her about her use of force in relation to the sexual assault incident, and on October 1, 2016, they denied her a salary increment that was otherwise due. (*Id.* ¶ 13.) A week later, Plaintiff claims that she was wrongfully terminated. (*Id.* ¶ 16.)

These facts suggest that Plaintiff has at least some basis for a retaliation claim, based on being terminated shortly after filing sexual-assault related charges. But again, her retaliation claim relates to Title VII, and not to the ADA.

In sum, based on a close reading of the charge form, the Court finds that Plaintiff may not assert claims against Defendants on a sex-based discrimination theory under Title VII. Therefore, this claim has not been exhausted and is dismissed with prejudice. *Shah v. N.Y.S. Dep't of Civ. Serv.*, 168 F.3d 610, 614 (2d Cir. 1999) ("The federal courts generally have no jurisdiction to hear claims not alleged in an employee's EEOC charge.") Plaintiff has, however, exhausted her administrative remedies for retaliation under Title VII, and the Court has subject matter jurisdiction over that federal claim.

### B. ADA: Disability Discrimination and Retaliation Claims

The exhaustion and relation requirements for Title VII exhaustion apply equally to claims brought under the ADA. *See Bent v. Mount Sinai Med. Ctr.*, 882 F. Supp. 353, 355 (S.D.N.Y.

1995) (citing 42 U.S.C. § 12117) (adopting the administrative exhaustion requirement of Title VII codified at 42 U.S.C. § 2000e–5 for claims under Title I of the ADA). For these claims, Defendants argue that Plaintiff never checked the box for discrimination in her initial charge, never alleged facts related to disability-based discrimination in her charge form, and never raised sufficient facts related to disability-based discrimination and retaliation when she amended her charge form. (Def. Mem. at 6-7; Reply at 1-2.) Plaintiff, however, argues that: a failure to check a box on a charge form is not fatal to bringing that claim, and her charge Amendment Letter and Right to Sue Letter are sufficient to put the Defendants on notice about her disability-based discrimination and retaliation claims. (Pl. Opp. at 6-8.) The Court again agrees with Defendants.

First, the Court notes that although Plaintiff did not check the box for discrimination in her initial EEOC charge, she did timely amend her charge to include a claim for discrimination under the ADA. (*See* Amendment Letter.) Further, although it is unclear from Plaintiff's initial charge whether she was attempting to raise a claim for retaliation under Title VII or the ADA, Plaintiff's Right to Sue letter reflects that the agency believed that she was attempting to raise claims under Title I and Title V of the ADA, which allow disability-based discrimination and retaliation claims respectively. (*See* Right to Sue Letter).

The Court believes that the EEOC mistakenly granted the Plaintiff the right to sue based on disability discrimination and retaliation, as opposed to sex-based discrimination and retaliation, as Plaintiff's charge focuses on the incident of her sexual assault, how she reported it, and how it was handled—and has absolutely no facts that could support disability-based discrimination or retaliation. Again, the Second Circuit has repeatedly instructed district courts in this Circuit to focus on the connection between the allegations in the charge form and the claims a plaintiff raises. *Williams*, 458 F.3d at 71 ("The central question is whether the complaint filed with the EEOC gave

that agency 'adequate notice to investigate discrimination on both bases.'") Hence, this Court finds

that the only claim that Plaintiff has adequately raised facts about is retaliation for reporting sexual

assault. Accordingly, despite Plaintiff's Right to Sue Letter, the Court does not believe that

Plaintiff has exhausted her administrative remedies for disability-based discrimination or

retaliation. But in any event, the Court will explain why her amended complaint still fails to allege

sufficient facts to make a plausible *prima facie* case for both those claims as well.

## II.    Signed Release

Defendants next argue that at least part of Plaintiff's retaliation claims must fail as a matter

of law because when Plaintiff resigned from DOC, she signed a form entitled "Authorization for

Release of Information-Applicant," which included the following passage:

> I, Michelle Melissa Melendez, have applied for employment as a Court Officer
> with the New York State Unified Court System (court system). I am aware that
> my entire background will be thoroughly investigated by the court system. I
> hereby authorize and request the release to an authorized representative of the
> New York State Unified Court System, any and all information, including
> academic transcripts, disciplinary matters, and any sealed records pursuant to
> Section 160.50(1)(d) of the NYS Criminal Procedure Law in the possession of
> or in the records maintained by your organization. This authorization shall
> remain in effect for a period of one year from the date of execution. I also do
> hereby *release any person(s) from any and all liability which may be incurred
> as the result of furnishing such information.*

(("Release Form"), Justin Adin Decl. Ex. E at 4, ECF No. 39-5) (emphasis added). Defendants

argue that Plaintiff's claim—that Defendants retaliated against her in sending information to the

OCA regarding her disciplinary matters—fails as a matter of law since she explicitly released

them from any liability that they would otherwise incur. (Def. Mem. at 5.) Plaintiff argues that

her signed release does not prevent her from raising retaliation claims because a release may only

be given effect when "it contains an explicit, unequivocal statement of present promise to release

*a party* from liability," and here, the release not only fails to mention any of the parties in this

litigation, but it only contemplates the release of "any person," and therefore only applies to the

individually named Defendant, and not to DOC or Westchester County. (Pl. Opp. at 11).

The Court finds Plaintiff's argument incredulous. As Defendants point out, municipalities have long been considered "persons" under the law in various statutes. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 707, 98 S. Ct. 2018, 2044 (1978); *FCC v. AT & T Inc.*, 562 U.S. 397, 131 S. Ct. 1177 (2011); *Cook Cty., Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 125, 123 S. Ct. 1239, 1243, (2003). Moreover, in earlier acts, Congress indicated that ""the word 'person' may extend and be applied to bodies politic and corporate… unless the context shows that such words were intended to be used in a more limited sense." *Monell*, 436 U.S. at 707 (citing Act of Feb. 25, 1871, § 2, 16 Stat. 431.) Further, under New York law, courts are to avoid interpreting contracts in a way that renders enforcement of the agreement nonsensical or "produce[s] a result that is absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties." *In re Lipper Holdings, LLC*, 1. A.D.3d 170, 171 (1st Dept. 2003) (internal citations omitted). Here, the release would be rendered meaningless if "persons" did not apply to Westchester County or Westchester DOC. Accordingly, the Court declines to adopt such an interpretation of the agreement and finds that Plaintiff's retaliation claims may not depend in whole or in part on Defendants' sharing Plaintiff's disciplinary history with other employers.

### III. Sufficient Pleadings

#### A. Retaliation Under Title VII

Title VII provides that:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

*See* 42 U.S.C. Section 2000e-3(a). Therefore, in order to plead a *prima facie* claim for retaliation under Title VII, a Plaintiff must allege: (1) that she engaged in a protected activity; (2) that the defendant knew she engaged in a protected activity; (3) that the defendant took an adverse employment action against her; and (4) that there was a causal connection between Plaintiff's protected activity and the adverse employment action. *See Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010). A Plaintiff can plead a causal connection either by raising facts that color *direct* evidence of a clear retaliatory animus or through facts that color *indirect* evidence of a retaliatory animus, for example, the proximity in time of two events. *Dayes v. Pace Univ.*, 2 F. App'x 204, 208 (2d Cir. 2001) (citing *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

Here, Plaintiff pleaded that on June 20, 2016, she "took the initiative to complete and remit the necessary documents to file outside charges [about sexual harassment] against Inmate," (AC ¶ 25), and that about two months later she was interrogated about the incident about which she had filed charges. (*Id.* ¶ 27.) She also states that, on the same day she was interrogated, she was denied a salary increment that would have been due on October 1, 2016 because she was under investigation for the use of force related to the incident, whereas other male corrections officers who were also under investigations for the use of force did not have their salary increments denied. (*Id.* at 29-30.) Additionally, she alleges that less than two weeks after she was interrogated, she discussed her salary increment being denied with her Union Representative, a conversation Defendants knew about. (*Id.* ¶ 33.) Then on September 1, 2016, Plaintiff was immediately terminated. (*Id.*)

On these facts, Plaintiff has met the pleading requirements to survive Rule 12(b)(6). Accordingly, Defendants' Motion to Dismiss her Title VII retaliation claim is denied.

12

## B. ADA Claims

As this Court already explained in Part I.B., *supra*, it does not find that Plaintiff has met her exhaustion requirements for an ADA discrimination or retaliation claim. But because Plaintiff did receive a Right to Sue letter regarding these claims, the Court will briefly address why it finds that these claims are insufficiently pleaded, in any event.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Here, Plaintiff brings ADA claims under two theories, based respectively on: (1) discriminatory intent; and (2) retaliation.[3] For the reasons discussed below, however, she fails to allege a claim under either theory.

Turning first to a discriminatory discharge theory, to make out a claim under this theory, Plaintiff would have to, as a prerequisite, establish that she is disabled within the meaning of the ADA. *Anderson v. Nat'l Grid*, PLC, 93 F. Supp. 3d 120, 131 (E.D.N.Y. 2015).

The ADA defines a "disability" as:

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
(B) a record of such an impairment; or
(C) being regarded as having such an impairment.

42 U.S.C. § 12102(1). For a plaintiff to establish that he has a disability under the statute's first subsection (i.e., to show that he is actually disabled), he must "(1) 'show that [he] suffers from a

---

[3] Plaintiff has not pleaded a claim under an ADA failure-to-accommodate theory because she concedes that when she returned to work after her car accident and requested a reasonable accommodation, she was granted a "light-duty restriction." (AC ¶ 16.) This is detrimental to an ADA failure to accommodate theory, which requires a plaintiff to plead that an employer refused to provide an accommodation, despite being aware of a qualified disability. *See A. H Canales-Jacobs v. New York State Office of Court Admin.*, 640 F. Supp. 2d 482, 499 (S.D.N.Y. 2009).

physical or mental impairment,' (2) 'identify the activity claimed to be impaired and establish that it constitutes a 'major life activity,' ' and (3) 'show that [his] impairment 'substantially limits' the major life activity previously identified. *Weixel v. Bd. of Educ.*, 287 F.3d 138, 147 (2d Cir.2002)).

Nowhere, in Plaintiff's complaint, does she so allege. Rather, all Plaintiff states in support of this theory is that in March 2016, she was involved in a car accident; she subsequently returned to work; she then requested a reasonable accommodation under the ADA; and she was then granted a "light duty restriction," which required Plaintiff to have limited inmate contact. (AC ¶ 16.) Nowhere in this paragraph or anywhere in the entire amended complaint does Plaintiff assert that she is "disabled" at all, let alone within the meaning of the ADA. Nor does she provide facts that even tell what injury she had that made her "disabled." Her lone statement about requesting a reasonable accommodation under the ADA and being granted a "light-duty restriction" are certainly not enough to meet the ADA's requirements for a mental or physical impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(1); *Weixel v. Bd. of Educ.*, 287 F.3d at 147. Plaintiff also fails to plead any facts that support that she could perform the essential functions of her job after her accident or raise any facts that show that Defendants had any animus for individuals with disabilities (indeed, Defendants immediately *granted* her request for an accommodation). Accordingly, Plaintiff's discriminatory intent-based claim is glaringly deficient to survive the pleading standards of Rule 12(b)(6).

Turning to her retaliation-based theory, Plaintiff's AC repeatedly includes the statement that she was "retaliated against" "for having requested a reasonable accommodation." (AC ¶¶ 26, 31, 37.) It is interesting that this statement was not in her EEOC charge or original complaint, but more importantly, it merely a conclusory statement for which Plaintiff provides no supporting facts other than the sentence at the beginning of her amended complaint, which states that she had a car

accident, returned to work, asked for a reasonable accommodation, and was granted it. (*See* AC ¶ 16.*) As with retaliation claims brought under Title VII, Plaintiff has to plead facts that support: (1) that she engaged in a protected activity; (2) that the defendant knew she engaged in a protected activity; (3) that the defendant took an adverse employment action against her; and (4) that there was a causal connection between Plaintiff's protected activity and the adverse employment action.

Additionally, unlike with Plaintiff's claim for Title VII retaliation, Plaintiff does not provide any facts that could support a direct or indirect theory of causation. First, she pleads absolutely no facts to show that Defendants had any disability-based animus against her (to the contrary, she pleads that Defendants immediately *granted* her request for a reasonable accommodation). And second, there is no suspect timing with her request for a reasonable accommodation and her subsequent denial of a pay increase and termination. In short, Plaintiff's broad and conclusory statements regarding ADA retaliation are precisely the type of hollow claims that were designed to be filtered out under *Iqbal* and *Twombly*. *See* 550 U.S. at 558. ("a naked assertion…gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of 'entitlement to relief.'").

Accordingly, Plaintiff fails to make out a *prima facie* case for either ADA discrimination or retaliation, and she also fails to meet the plausibility and specificity requirements of Rules 8(a)(2) and 12(b)(6). Accordingly, all of Plaintiff's ADA-based claims are dismissed.

### C. 1983 Claim

Plaintiff also raises a claim under 42 U.S.C. § 1983 on grounds that she is a female who was deprived of her constitutional rights when Defendants discriminated against her on the basis of her gender and disability and by taking away her property rights without due process. (AC ¶¶

59-60.) Defendants argue that Plaintiff fails to properly plead a 1983 claim for several reasons. First, they argue that equal protection claims parallel Title VII claims, and therefore the viability of an equal protection claim under 1983 is the same as the underlying Title VII claim. (Def. Mem. at 13.) Second, they argue that, with regards to due process, it is well-established that a probationary employee can be discharged without a hearing or statement of reasons, and therefore, Plaintiff was not entitled to any due process with respect to her termination. (*Id.* at 13). Third, to the degree that Plaintiff had a property interest in her employment, her well-established remedy was to commence a proceeding under Article 78 of the N.Y. Civ. Prac. Law and Rules. (Def. Mem. at 13.) The Court agrees with Defendants.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). "In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a 'person' acting 'under the color of state law' and (b) that the defendant caused the plaintiff to be deprived of a federal right." *Back v. Hastings on Hudson Union Free School Dist.*, 365 F.2d 107, 122 (2d Cir. 2004). Additionally, "[i]n this Circuit personal involvement of defendants in the alleged deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977); *Fiengold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004).

As to equal protection claims, "[t]raditionally, the Equal Protection Clause of the Fourteenth Amendment protects against [classification-based] discrimination." *Goldfarb v. Town of West Hartford*, 474 F.Supp.2d 356, 366 (D. Conn. 2007) (internal quotation marks omitted). The Equal Protection Clause requires that the government treat all similarly situated people alike.

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To maintain an equal protection claim, a plaintiff must "show adverse treatment of individuals compared with other similarly situated individuals and that such selective treatment was based on impermissible considerations such as race, religion, or sex as well as intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Miner v. Clinton Cty.*, 541 F.3d 464, 474 (2d Cir. 2008).

Additionally, to demonstrate that she was subject to disparate treatment, Plaintiff must show that she was treated "less favorably" than a similarly situated employee outside [her] protected group." *Graham v. Long Island R.R.*, 230 F.3d 39 (2d. Cir. 2000). In *Graham*, the Second Circuit elaborated on what "similarly situated" means. A plaintiff must demonstrate that she is similarly-situated in "all material respects" to the individuals with whom she is comparing herself. *Id.* A plaintiff also must show that her co-employees were subject to the same performance evaluation and discipline standards and that the conduct for which discipline was imposed was of comparable seriousness. *Id.* at 40. (internal citations omitted).

Like Title VII claims, employment discrimination claims brought under Section 1983, alleging employment discrimination based on race, religion, sex or national origin, are governed by the analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Back*, 365 F.3d at 122. Hence, the requirements under 1983 are the same as those required to establish a *prima facie* employment discrimination claim under Title VII—that is, a plaintiff must demonstrate that (1) she belonged to a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Tolbert v. Smith*, 790 F.3d 427, 436 (2015); *Rosen v. Thornburgh*, 928 F.2d 528, 532 (2d Cir.1991).

Beginning with Plaintiff's equal protection-based argument, the Court finds that Plaintiff's disability discrimination claims fails based on the pleading deficiencies already described in Section III.B., *supra*. As to Plaintiff's sex discrimination claim, the Court finds that Plaintiff does make out just enough for the claim to stand. She describes being the "only female Correction Officer serving a probationary period," (AC ¶ 17), and describes being treated differently compared to "a male correction officer who was also completing his probationary period" and who also "responded to an inmate with force," but did not "file charges against the inmate." (*Id.* ¶ 35.) Though Plaintiff did not allege specific facts stating that she was qualified for the position that she held, the Court finds that her being hired for the position suffices for pleading requirements at this stage. Accordingly, Plaintiff's 1983 claims based on equal protection, survives at this juncture. But because Plaintiff did not allege any facts to show Defendant Kevin Cheverko's personal involvement, it only survives against Westchester County and Westchester DOC.

Lastly, regarding Plaintiff's 1983 claim based on due process, the Court finds that despite her conclusory allegation, (AC ¶ 60), Plaintiff does not have a property right in her employment, which is a prerequisite to a due process claim. Although she was a public employee, and public employees can occasionally have property interests in their government jobs, she was not such an employee. Only those public employees who have a legitimate *claim of entitlement* in their jobs, through written or implied contracts, statutes, or particular employer practices (*e.g.* tenured school teachers) can raise due process claims based on a property interest in their jobs. *See Croci v. Town of Haverstraw*, 175 F. Supp. 3d 373, 385 (S.D.N.Y. 2016) (holding that plaintiff who had a "long history" of jobs with the New York City government and the City University of New York did not have a property interest in his job despite claiming that he had received "assurances" from his employer that he would be reappointed to his administrative position for the next two successive

years); *Whitfield v. Fraser*, 272 F. Supp. 2d 340, 345 (S.D.N.Y. 2003) (explaining that civil servants do not have unrestricted property interests to continued employment). Here, Plaintiff was never entitled to long-term employment with the government and did not raise any facts to show that she had a written or oral promise of employment. Indeed, she was not even a full-time employee, as she was still completing her probationary period training. Hence she had no property interest in her employment.

To the degree that Plaintiff claims to have a limited interest in ensuring that her termination was not made arbitrarily, capriciously, in bath faith, or in violation of her Constitutional rights, she is able to seek judicial review through an Article 78 hearing and the state court system. *See Butler v. Abate*, 204 A.D.2d 171, 172, 612 N.Y.S.2d 19 (1994) (New York State appellate division affirming holding of IAS court that terminating probationary correction officer was neither arbitrary, capricious nor made in bad faith); *Whitfield*, 272 F. Supp. 2d at 345 (holding that there is no requirement for public employees to be granted hearings *before* being terminated until and unless they can establish that they have a property interest in their employment). Accordingly, Plaintiff's due process claim is insufficient to withstand Defendants' Motion to Dismiss.

### D. New York State Executive Law Claim

Plaintiff also raises sex and disability-based discrimination and retaliation claims under New York State Human Rights Law Executive Law §§ 296-97. (AC ¶¶69-76.) Plaintiff and Defendants agree that the pleading standards for discrimination and retaliation claims raised under New York State Law mirror the pleading requirements under Title VII and the ADA. (*See* Def. Mem. at 17-18; Pl. Opp. at 21.) As such, both parties agree that the viability of Plaintiff's state law claims is the same as that for her federal claims.

Accordingly, this Court finds that none of Plaintiff's disability-based claims are

sufficiently pleaded under New York State law. Because Plaintiff properly pleaded her Title VII retaliation claim (and met her exhaustion requirements), that claim survives under the analogous New York State law. Further, while the Court found that Plaintiff did not meet her exhaustion requirements for a Title VII discrimination claim, it did find that she met her pleading requirements for sex discrimination under § 1983 in her amended complaint. (*See* Part III.C., *supra*). Accordingly, Plaintiff's claims for sex-based discrimination and retaliation under New York State law survive.

### E. Tortious Interference Claim

Lastly, Plaintiff raises a claim for Tortious Interference under New York State Tort Law. Both parties agree that in order to state this claim, a Plaintiff is required to allege that: (1) she had a business relationship with the OCA; (2) Defendants knew about the relationship and interfered with it intentionally; (3) said interference was solely out of malice, or through dishonest, unfair, or improper means; and (4) Defendants; interference caused injury to the relationship. (Def. Mem. at 18; Pl. Opp. at 21); *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006).

Here, the Court agrees with Defendants that Plaintiff fails to plead a *prima facie* case. Although Plaintiff arguably had a "business relationship" with the OCA as a prospective employee, Plaintiff's claim already fails muster on the second element, which requires a plausible allegation that Defendants interfered with such a relationship *intentionally*. As the Court already discussed in Part II, *supra*, Plaintiff is barred from holding Defendants liable for any conduct related to their sharing her disciplinary history that they possess. (*See* Release Form).

Further, even if the Court accepted Plaintiff's argument that her resignation was forced and invalidated the waiver, because OCA is a law enforcement agency that has a legitimate interest in Plaintiff's background and Defendants actions were in response to its specific request for

Plaintiff's employment-related history, Plaintiff cannot—as a matter of law—claim that Defendants actions in responding to that lawful request were *solely* out of "malice or through dishonest, unfair, or improper means." Hence, her pleadings also incurably fail to satisfy the third *prima facie* element. Accordingly, the Court dismisses this claim as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. Defendants' Motion to Dismiss is GRANTED as to Plaintiff's claims for: disability-based discrimination and retaliation under the ADA and New York State law, sex-based discrimination under Title VII, tortious interference under New York State Law, and Section 1983 based on a due process violation.

Defendants' Motion to Dismiss Plaintiff's claims for sex-based discrimination and retaliation under New York State law is DENIED, and similarly, Defendants' Motion to Dismiss her 1983 claim based on an equal protection theory is DENIED.

Accordingly, Defendants are directed to answer the Amended Complaint by February 15, 2019 and submit a completed case management plan to chambers by February 26, 2019. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 37.


Dated:    January 16, 2019                                      SO ORDERED:
          White Plains, New York

                                                          _____
                                                              NELSON S. ROMÁN
                                                          United States District Judge